Case number 225177, United States of America v. Nicholas Hayek. Argument not to exceed 15 minutes per side. Mr. Russ, you may proceed for the appellant. Good morning, Your Honors. I'm Ben Russ of the Tennessee Bar. I represent Mr. Hayek. I've reserved three minutes of rebuttal time. Fine. This morning I wanted to address first what I believe is error on the part of the District Court in the application of Federal Rule of Evidence 807. First, I'd like to say the government has asserted in its brief that this should be reviewed under plain error. I would assert that the trial, I'm sorry, the District Court denied a motion by the defense by Mr. Hayek under Rule 403, which of course is a catch-all in any kind of overly prejudicial evidence being admitted. I would assert that that establishes that the court could review this under plenary review. However, if the court does not find merit in that argument, I still believe plenary review is appropriate because I think it leads us to the same place. Did the District Judge address the Rule 807 issues? In his Rule, no. Well, the government had motioned to allow this to be admitted and he, the District Court, admitted on their motion. Yes, he addressed them essentially. No one was involved then? Yes, of course. The trial attorneys asserted that this should be excluded under 403. The District Court did go through an 807 analysis. To answer your question, Judge Moore, I would think that the merits of the issue were addressed by the District Court based on their order. The government, of course, as I said, has asserted that this is waived other than for plenary review. Regardless, I would say that either way you're looking at this, you have to have error. Either way, whether it's an abuse of discretion that misapplies the law or you have plain error that's a plain and obvious error, I think that's mostly the same analysis in that regard. I also feel that if you feel that there was plenary review and abuse of discretion, you have to find prejudice, which is, loosely speaking, the verdict is infirm because of this error. So which factor? It seems to me that the District Court, there's a fair amount of sense to the notion that the victim was much older when she testified at trial and the video would show what she would have looked like much closer in time. That strikes me as fairly convincing. So what's wrong with that logic? Well, I think that if the government's intention by introducing this evidence was to show the age of the victim and what she looked like at the time that the offenses allegedly occurred, they could have shown a photograph. They didn't need an interview of her that bolstered her trial testimony and then having the District Court assert that this was the most probative evidence. And that was an assertion that the government had made in their brief. The District Court's order is actually quite sparse on it. It simply says that it believes the interview is contemporaneous and likely her strongest recollection of the alleged events that transpired from her perspective. The government cannot produce any evidence that would be more probative than a contemporaneous interview from the alleged victim. So, though that is raised by the government's brief, that's not what the ruling from the District Court was based upon. Simply, the District Court believed that the pretrial interview that was within approximately a week of when these allegations were disclosed or made at first was more probative than whatever her trial testimony was at the time of trial. When she was much older, however, again, if the government's purpose in doing this was to assert that this was what she looked like when this happened and that Mr. Hayek's assertions he didn't know or was misled were incorrect, that could have been done by any other means almost. Simply, like I say, a photograph of her at the age that she was when this occurred would have sufficed to prove that point. So, I don't think that has merit. As far as the District Court's assertion that this particular evidence was the most probative evidence, if that logic is carried through, as I've noted in my brief, then what's the purpose of having a trial? They could simply say, well, they interviewed him right after it happened. That's the best memory that person's going to have of what the events that make up the evidence they could submit at trial. We'll just use that. It puts aside the fact, of course, that the trier of fact as well as the judge needs to observe the demeanor and veracity of the witness that's testifying. Obviously, her pretrial statement was not cross-examined. I would say that it's insufficient to say... Just to clarify one point, with respect to cross-examination, I assume you're not raising a Crawford Confrontation Clause challenge because she did testify at trial, so you did have the opportunity to cross-examine her and cross-examine her about the video? No, I'm not raising a Crawford issue. Is that the reason, though, because she testified at trial, so you had the opportunity to cross-examine? I think the logic or what the district court thinks insulates this is that the defense did have the opportunity to cross-examine her at trial. The point I was simply making was that if this is the most probative evidence, obviously any pretrial interview is not going to be subject to cross-examination during the interview itself. Of course, he had the opportunity to ask her questions about what was in that interview, but again... Did the defense lawyer do that? The defense lawyer asked questions, yes, as to what were perceived inconsistencies between what her pretrial statement was and what some of her trial testimony was, but again, the basis of the district court's ruling was that that interview was more probative than her trial testimony, based under 807A2, and I simply don't see how that could be the case. Suppose the district judge was wrong in saying it's more probative. What should we do about that? Do you think that entitles you to a new trial? I think it does, Your Honor. The basic assertion of Mr. Hayek at this, at trial, his trial testimony was that he was under the impression he was engaged in some form of sexual game with someone that he believed to be of age. His reasoning behind that was that he had done this with other individuals in the past, and the website or platform they were using had a waiver that said people under 18 were not allowed to access it. So clearly, credibility is always an issue, but in this particular instance, it was a critical issue. He was asserting that this was basically a misunderstanding on his part, and that he stopped doing that once he realized the age of the person that was actually involved. Why would it be harmless if she also testified and said the same thing? What was particularly prejudicial about the video as compared to the victim's direct testimony? I would say that, again, the bolstering effect of it, if essentially the government is permitted to have a witness testify, the witness does so-so, and then is allowed to introduce a pretrial interview that says, well, she's already said this before, she must be telling the truth both times, versus saying that Mr. Hayek's version of the facts versus the trial testimony of the alleged victim, and then the jury can do its job, which is to determine which one they believe. Just to clarify, your point is not that there's substantively different allegations. Your point is just that having the same thing repeated twice makes it more convincing? That is definitely one of my points. Substantively different, I think there were some differences. I don't think that, I think the basic allegations were mostly the same. Details were not identical, of course, but I do think, obviously, being subject to a cross-examination, typically, especially of witnesses of this age, doesn't improve their testimony. Obviously, being in a courtroom with people versus being with an officer in a fairly controlled and neutral environment doesn't improve their testimony. So, in my opinion, the admission of this creates prejudice or non-harmless error because it allows the government to bolster their witness improperly. What about after you challenged the witness's credibility? Is this then appropriate evidence to respond to that issue? Well, first of all, this was a pre-trial motion that the government sought, so this was not in response to any kind of... I understand. Once the testimony came, once the trial played out and you were challenging the credibility of the victim, does this ameliorate the harmless, the error? Is any error harmless now? Well, again, that argument wasn't made and there are proper steps that had to be gone through in order to have that admitted as substantive testimony. If it was a... I don't think it renders it harmless, no, Your Honor. I think that the, excuse me, the... First of all, again, it was a pre-trial motion that that wasn't the basis for the purpose of the admission of the testimony or the evidence in the first place, but yes, if that was the reasoning that the district court used, which is not what it purports to have used, I don't think that necessarily negates the prejudicial effect. The entire tape was played. If there was a particular assertion that the witness testified to a trial and there was a prior statement that was consistent with that, I think it could have been done in a different fashion if that was what the purpose of the admission of the testimony was in the first place. I don't think just a wholesale playing of the entire tape was necessary if, again, that was the purpose of it, which it was not. So, no, I don't think that necessarily rectifies the situation, even if that was potentially a basis for why it was admitted. Are there other things? I know your time is running out. Are there other topics that you want to focus us on? Your Honor, obviously we filed a motion to suppress Mr. Hayek's pretrial statement. I think that's very well outlined in the brief, but at the same time I would say that he, one thing that the district court definitely establishes is that the search warrant of his home was executed at approximately 6 o'clock in the morning, 6.15, and then the interview with him didn't begin until about 7.05, 7.06 I think was the exact time stamp. So Mr. Hayek's assertion is there were many things that were discussed, particularly that he asserted that he wanted an attorney, particularly that they were pressuring him to give a statement and implicated that his family being not U.S. citizens, that would be a negative impact on them. Those things are not on the recorded interview that Mr. Hayek gave. What do we do with the fact that the magistrate judge found that the officers were more credible than Mr. Hayek? Well, again, Your Honor, I think that the key point here, and other than saying that it didn't happen, I don't think that the officers testified at any length about what happened prior to their recording beginning and when they read him a version of the Miranda warnings. So, yes, I think that the assertion would be that the district court was factually erroneous that they didn't credit Mr. Hayek in the first place and that there is a gap here of a significant period of time. Both sides tend to agree that he was in his room with several officers, number uncertain, but that he wasn't allowed to leave there and he was kept there the entire time even prior to the recording beginning. So just to pick on one topic, my understanding is Mr. Hayek said that the officers came into his room with their guns pointing at him, and some of them were long guns, and then the officers say, well, that isn't what happened. And the magistrate judge, as I understand it, then makes a credibility finding in favor of the officers. So normally we are supposed to defer to credibility determinations by the court that sees the people. What should we do here? I understand, Judge, it's difficult. Again, I would point to, I mean, the tape will speak for itself, whatever is on the recorded interview, but I would point to the time period prior to the recorded interview. Some of the allegations were corroborated by parts of his family, that they were not allowed to see him, that he was in his room with several officers. So again, it wasn't entirely based on what the officers said versus what Mr. Hayek said. But I think I'm... So was part of the problem, in your view, that he was interviewed in his room? No. I'm just saying that other people than himself were able to corroborate that he was secluded, I guess might be the right word, but he was there by himself. I don't think necessarily that's determinative. I do think, based on the other facts that he testifies to and their testimony as well, that he was not free to leave from his room. But he was given Miranda warnings. He was, yes. Yes. And again, I think the time period prior to the warnings and the tape beginning is the time period that should have drawn the district court's attention more than it did. Thank you. Thank you. May it please the court. My name's Megan Gomez. I represent the United States. And as you know, in this matter, the defendant was convicted at trial of five child exploitation-related offenses. We believe that the district court did not err in any of the rulings before it. And we believe that that led to the proper conviction of the defendant, Mr. Hayek. So we ask that you affirm all of those findings. Excuse me. What was the basis for the magistrate judge finding that Hayek's testimony was not credible? Was it just based on the fact that Hayek remembered the time before the interview occurred and didn't remember what happened while the interview was occurring and the recorded interview? I think that that was a significant consideration as to his credibility. But should that mean that he's entirely not credible whenever there's a conflict between what he says and what the agents say? No. I think within considerations of everything. He made several statements that he was threatened, that his family was threatened because there was a HSI agent that was there. And HSI is connected with ICE, which is immigration, and therefore there was a threat. However, when the agents testified, they explained that the HSI agent was not connected with immigration or any type of deportation, but was a computer forensic analyst that was there for obvious reasons, that being the search warrant. So when they talk about the firearms, there was two different law enforcement officers that testified. They said that they didn't approach or remove their rifles, if there was any rifles in the approach to the search warrant, that there were several, excuse me, more than several, nine or ten, I believe, agents, but it was a larger house. And the magistrate court found all that reasonable. It was the defendant that asked to speak privately. He was asked if he'd like to speak. This was after he was arrested. He had an arrest warrant for a complaint for enticing this 10-year-old girl, and we had that valid search warrant. So they asked him if he wanted to speak to law enforcement. He said, yes, that's fine, and then asked to speak privately in his bedroom. So on the two things that you've mentioned where there's a conflict, on the rifles and showing of guns, there were two officers who testified that they didn't point the guns at him, one of whom, as I understand it, has a credibility problem of her own. That was true, yes. When we addressed that during that motion to suppress, there was some credibility as to her prior orders with law enforcement and her relationship with her now husband. That was addressed during the motion to suppress and vetted by both the defense attorney and the magistrate judge. But we believe that the information was corroborated, obviously, by the other task force officer that testified. And then on the statement, as I understand it, the officers did say that if he didn't cooperate, they were going to have to look through all the papers in the house, correct? They didn't say that. They didn't make any type of threats. They didn't say that they would need to look through all the papers in the house? In terms of? Just looking at the papers. I'm not saying that they said immigration papers. I don't remember that. It might be me implying that it was an immigration thing, but I don't remember that. I know that they said that they certainly have to look through everything because of the search warrant in terms of the computers and the forensics. He interpreted this as a threat to investigate the immigration status of his family, and his family was not U.S. citizens, correct? If we do give him the credibility that he just simply made that mistake, then yes, I could understand him making that jump. But that's obviously not the standard. It has to be a police coercive statement. Does it make his statements involuntary? Correct. And I think that the tape recording speaks for itself. He tells this harrowing story that happened for an hour before the tape plays, and then you hear the tape and he's laughing and joking with these agents. Now obviously this is in a vacuum when we consider the motion to suppress, but we go on to the trial and his story changes yet again. Certainly that's not for consideration in terms of the motion to suppress, but it again goes to that credibility and that consideration. He also says that he was intoxicated and had taken NyQuil and that he was in a stupor kind of thing. Correct. And he also said that because of his nerves, he completely shut down and that's why he lost his memory, in addition to the alcohol and the NyQuil. And perhaps he did drink NyQuil and alcohol the night before, but again we go back to that evidence, that hour and a half tape, his speech was not slurred. He's remembering usernames and telephone numbers from when he was 14 or 15 years old. So as this court's held in the past, yes you can be drunk, but that doesn't mean that you can't waive your rights knowingly. If there's no proof, and in here we had a taped recording that shows that you were actually intoxicated and not able to appreciate what was happening before you. So I believe that the record showed that he was able to appreciate what was happening and in fact he willingly was involved. He offered information when it wasn't asked of him. And he was in that comfortable setting. So I think that it was, it was voluntary and it was certainly knowingly and taking in the totality of the circumstances. He was intelligent, yes he was young, but he was a pre-law major. He was having this give and take with these agents. And so I think that it does hinge on that credibility of his story and that I think is an important consideration when we talk about the totality of the circumstances. Can I switch to ask you a question about the bill particular argument? I did find it somewhat concerning that it was quite conclusory, the indictment language. And I'm curious with indictment language like this, as I understand the rules, the indictment is supposed to kind of set the stage for double jeopardy. And the indictment just lists the date range, what is it, around May 30th, 2018, and just lists like the statutory language. And so like induce or coerce is enough. But is it the government's position that, suppose he sent several emails to the victim, each one trying to induce the victim, you could say that those were each individual offenses, like individual violations of the statute. And if that's true, I'm not certain this indictment would have put him on notice of which particular incident was at issue. Or is it the government's position that when you use general language in a date range like this, that the entire encounter is the thing that is subject to double jeopardy, so it's only one count for all this activity. That's what I'm kind of struggling with, because I thought the indictment was supposed to set the parameters of what is double jeopardy. You could have an indictment like this, get an acquittal on one text, and then come back and then sue over another text like a couple days later or something and say, well, this one's now, and you could do that seriatim. So what's your response to that concern? It's the latter. It's a general consideration of that course of conduct over that period of time. With that specificity, it's when you have one victim and you have a child victim, there's always that hesitancy of being too specific, because children aren't necessarily the best historians of their life. So we tend to go more general. I think in terms of this case... What if there were multiple victims? Would that also be a concern? Why couldn't you use initials? I completely agree with concerns with confidentiality, and it's a minor, but would there be a way to notify at least the person who was the victim? I can't tell you why I didn't use initials in this particular indictment. I know generally when I have multiple victims, I absolutely do. Most of the time when I have one victim, I normally do. I don't know. It could just simply have been a mistake on my part, or just for the fact that it was one victim. In this particular case, the discovery pointed to maybe there might have been other victims, but they weren't in this jurisdiction that we could prove. If there were others, they were over the age of 12, and our possession of child pornography charged 12 and under, which gives a little bit more specificity as to the direction that we were going. Do you think the legal rule should be if you use a general indictment, then that basically encompasses every potential conduct that could conceivably be within the range as the double jeopardy kind of parameters of the case? I think for the purposes of that bill in particular, it's so that they don't suffer any prejudice or surprise. What additional information would they have gleaned if I was specific? I probably would have listed everything. It would have been pretty much the same as it stands, unless I did, as Your Honor suggested, charge each and every count separately on these different course of conduct. There was numerous types of course of conduct. We had an actual victim. We had an FBI agent. We had photos sent. We had language via social media text messages. There was various aspects. I certainly understand that, but that was kind of our intent was that generalization, that course of conduct. To build on that, if there had been an acquittal, then would you be precluded under the double jeopardy clause from ever charging him for activities in the month of May of that year having to do with, if there's an acquittal at trial, with whatever the person was who was the subject of that count? I certainly believe the way that we charged it and the way that we were moving forward that yes, that it would be certainly disingenuous, if not just blatantly double jeopardy, if I did try to do that. Vis-a-vis that particular victim, but then the question would be, what about other children who would qualify? Would that general language in the indictment preclude the government from filing a new case if there's an acquittal against this defendant for a different child? I don't necessarily think so because you have the discovery. You've placed them on notice by this information. Jurisdictionally, that was the only victim that we had in our district. Of course, there was other investigations going on, and there's likely that other victims could have been identified. I don't know. I know that our FBI agent put that information out, but it wouldn't have come from our district because that was the only victim that we were aware of in our specific district. If there were another victim in your district, would it preclude that? I think I would be in trouble in making that argument that it's not double jeopardy. Can I just switch briefly to... I did find the argument about... This is the Harris State Rule, Rule 807. I did find the argument pretty powerful about the video and the picture of the victim had aged, and so this is closer in time. Do you think that fits within the rule, though? Because it says a hearsay statement, so it's talking about language rather than pictures. Is it admissible if it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts? I think it's talking about the statement rather than the visual. Do you think it's appropriate for us to take into account the visual in interpreting Rule 807? I think in that analysis, when you're taking in different considerations of that analysis, where you have that first step of whether or not it's trustworthy, and then you go to the second thing of whether or not it's probative, I think that's where it's being a video. Whether or not that that could be more probative because it was that capture in time does become a good consideration when we talk about whether or not it's the video or just the voice, because I believe that was a request via the motion in limine. And as it's been argued, well, why not a photo if you're just trying to take a glimpse of that 10-year-old? But I think that that's really important, too. When we're talking about child victims, child victims change. And what we had before us during trial was a 14-year-old teenager. And when intent and lack of mistake and the actual defense was, I had no idea this was a 10-year-old, is prevalent throughout the trial, then this child's mannerisms, her responses to things, how she behaves in this moment in time at 10 years old becomes incredibly relevant and probative. In terms of 807, certainly we believe that that entirety becomes important because we're talking about a three-year difference, essentially, or a two-and-a-half-year difference. And we don't believe it's not just bolstering anything. Her stories, her understandings during that time are better. They're better detailed than they were when she was 14 years old. Sometimes you do have the benefit of having a teenager that's more mature and better spoken, but in this situation, that 10-year-old's a little bit stronger. So were you introducing it for the content of the statements? So when we asked for the notice of intent, we did it for that purpose of the content in that consideration because we had no idea what was going to happen when we went to trial. We don't know if this 14-year-old was going to break down. Certainly, it's intimidating, be it child or adult. And so we wanted that in place so that we had options. But you introduced the victim's earlier statement before you examined, before you introduced the victim at trial or not? No. We introduced the entire statement at the close of her direct examination. And so I essentially asked her, what's the better memory, right now or when you were a 10-year-old girl? And she said, when I was a 10-year-old girl. And then you introduced it. Okay, thanks. Thank you. I ask that you affirm the court's rulings. Thank you. Just briefly, Your Honors, on the same point, I would respectfully disagree with Ms. Gomez about, you know, Mr., if the benefit, whether it was tangential or the intended purpose of introducing this statement by the alleged victim prior to, well, during trial, but after her testimony, was that the jury was able to see her and see essentially what Mr. Hayek had seen purportedly at the time these offenses occurred. Well, he didn't sit down and talk to her in a room for 45 minutes. I don't know that they had any video interaction. They had pictures, went back and forth in text messages. So again, if the purpose was, which it now might have been, that they wanted the jury to see what it was like and what she acted like and how she responded to questioning, that was never an impression that Mr. Hayek had at the time. I would agree, Judge Murphy, I'm not sure that even is underneath what the rule permits, but even if it did, and even if that was the purpose, which again is not what the district court's purpose was when it admitted it, I still think it is not giving the jury any kind of an accurate impression of what Mr. Hayek's ability to see and perceive and, you know, how does she respond, what is her demeanor. This is clearly not somebody who's pretending to be 10. This is someone who's actually 10. He didn't have those opportunities. So I don't see that that really should have been admitted for that purpose either. Unless there are any other questions the court has, I'll just rest on the rest of my arguments. Thank you. Thank you. Thank you both for the arguments and the case will be submitted. And Mr. Russ, I see that you are appointed pursuant to the Criminal Justice Act and we thank you for your service to your client and the pursuit of justice. Thank you both and the clerk may call the next case.